MARY A. LYON, Adm'x, *vs.* J. T. LYON & W. H. HILL.

April Term, 1873.

YEAR'S ALLOWANCE TO WIDOW AND CHILDREN.—The year's allowance given by law to the widow and children of a decedent should be set apart out of specific property to be designated by the commissioners, and cannot be claimed out of the assets of a partnership of which the deceased was a member, until the partnership debts are paid.

RESULTING TRUST, PERISHABLE PROPERTY, WHEN.—A resulting trust will not arise in property of a perishable nature, nor upon other than the state of facts existing at the time of the purchase, and will not be implied unless, taking all the circumstances together, that is the fair and reasonable interpretation of the acts and transactions of the parties.

15

SAME, CASE IN JUDGMENT.—Where, therefore, an *administratrix entrusted* her son with the settlement of the estate, and he took possession of a stock of goods belonging to the intestate, and carried on the business for several years, selling out the goods, and buying others, and forming a partnership with a third person. *Held,* that the administratrix could not follow the proceeds of the goods, nor, by attachment, acquire any right except in the interest of her son in the surplus assets, after payment of the partnership debts.

ELECTION OF FORUM.—A creditor who first sues his debtor at law cannot transfer the litigation to this court except upon the terms of dismissing his suit at law.

*M. M. Brien,* for complainant.

*Morris, Ewing & others,* for defendants.

THE CHANCELLOR :—The original bill was filed on the 24th of February, 1871, and alleges in substance that C. P. Lyon, complainant's husband, died on the 20th day of October, 1865, intestate, and complainant was appointed administratrix of his estate and gave bond with J. T. Lyon, her son, as surety, and entered on the discharge of her duties ; that, being a woman and knowing little about such business, " she left everything in the hands of the said J. T. Lyon to manage, collect, secure," etc. ; that at the death of her said husband he was engaged in merchandizing, and had in his store some $2000 worth of goods and groceries ; that her said son J. T. took possession of them, " but instead of selling them, he kept, used and retailed them, sold what he could and reinvested the money and has kept up the same business to this day ;" that, in addition to the goods, her said husband had $800 cash in J. T's. hands, and she handed him $449 coupon bills ; that he collected of Hartliff some $1600 from sale of land made by intestate, and probably other small debts ; that she does not know the entire aggregate, but supposes it between $4000 and $5000, all of which he has kept and used in said business of merchandizing," and has never settled with her, only he has paid the taxes on their property, and advanced her some little amounts along to help support her and family, but how much she does not know ; that she " supposes he has an account of it which she desires him to produce and show and prove ;" that there were $2000 due on the house and lot where she lives, that J. T.

promised to pay this amount but has only paid about $600, leaving the residue with interest and costs to be paid by her. That her husband's estate was little in debt, etc.

The bill further charges : That defendant J. T. has purchased with said funds a one-third interest in a store-house on Broad street where he is doing business, and a small lot of some 12 feet on South Summer street.

That he has also a store in Wilson county, at Silver Springs, in which he has some $2000 or $3000 worth of goods and groceries ; that " defendant Hill is connected as a partner, but to what extent she cannot tell," "or even whether he is interested as a partner at all she does not know, but he has control of said store at Silver Springs ;" that "what goods or money was put in by J. T. was a part of this trust fund."

That defendant J. T. "also has some of the same goods left by his father now in his store on Broad street, and some others, but she can't say what amount.

The bill further charges that complainant can get no settlement out of defendant J. T. ; that he is about to fail and "is about to fraudulently dispose of his property," and unless she can set up the trust as to these funds she will be ruined and lose her debt.

The bill also states that she has never had any dower or year's support laid off, and being poor is not able to give the usual attachment bond, etc.

The bill prays that all of said property both in Davidson and Wilson counties be attached, and defendants be enjoined from disposing of any part thereof until the further order of the court ; that defendants answer under oath ; that complainant be "allowed to follow up said trust funds, etc."

Attachments were issued and levied upon the goods on Broad street and at Silver Springs, and the goods have been sold and the proceeds are held subject to the decree in this cause. The defendant Lyon's interest in the real estate on Broad and South Summer streets was also attached.

On the 11th of March, 1871, J. T. Lyon filed his answer

to this bill. He admits the death of C. P. Lyon, the qualification of complainant as administratrix, and that he was her surety as charged. He denies the charge that the estate was little in debt, and says it was in debt between four and five thousand dollars, "if not more." He admits that complainant being incapable of attending to the business of the estate, "he, respondent, by her request and solicitation became the agent of complainant in matters connected with the estate and the administration thereof; that he did in fact do the entire work and was burdened with the entire labor of the estate." He admits that C. P. Lyon was, at his death, engaged in business in Nashville and had in his store goods, wares and merchandise amounting in the aggregate, "when turned over to the respondent," to the sum of $1266.68, and not $2000 as charged. He admits that he did take possession of these goods under an agreement between him and complainant, but denies that he valued them at $2000, and, on the contrary, avers that "an invoice was fairly taken of said goods" which amounted to $1266.68 as aforesaid; that instead of selling them in bulk he sold them in retail, and was thereby enabled to sell them at the invoice price; "that this was done per agreement between himself and complainant." He denies that he received $800 in cash and says he received only $444. He admits complainant did "hand or loan" to respondent $444 coupon bills which he took as cash; that he collected of Hartliff $1500. He denies having collected $4000 or $5000 as charged, but only about $2500. He files as an exhibit his account with the estate, which shows a balance due from him of $865.23.

He denies that he purchased the third interest in the Broad street lot, and the 29 (not 12) feet on South Summer street with funds of the estate, but says he bought and paid for them in the life-time of his father, out of his individual means.

He denies having any of the goods of the estate on hand, and says the charge is preposterous.

He says that on the 1st of April, 1868, he formed a part-

nership with his co-defendant W. H. Hill in the grocery business at Nashville, the terms of partnership being that each should share equally in the profits and losses, and each should have one-half interest in said business; that at the formation of the partnership he put in the business about $2000 worth of stock, and Hill $1900 in cash and $200 in goods.    That about the 1st of November, 1870, he and his partner concluded to establish a branch house at Lebanon, and did so, being equal partners in the business, the arrangement being that respondent should manage the business in Nashville and Hill in Lebanon; that about the 12th of January, 1871, they concluded to move, and did move the branch store from Lebanon to Silver Springs, and were doing a good business until closed by the attachment in this case on the 24th of February.

He denies that he was about to fail or fraudulently dispose of his property, etc.    He appends as exhibits to his answer, the accounts of J. T. Lyon and J. T. Lyon & Co. with C. P. Lyon, Mrs. C. P. Lyon, and the estate of C. P. Lyon.

The answer of Hill corresponds with the answer of J. T. Lyon in regard to the partnership between the defendants, denies all knowledge of matters relating to C. P. Lyon's estate, and states that defendant knows that the firm paid taxes for the estate and that complainant frequently bought groceries from the firm for which she still owes.

On the 3d of March, 1871, Willie Woodward filed his bill as a creditor of J. T. Lyon against the said J. T. Lyon, James Lyon, and Mary A. Lyon as administratrix.    The bill charges that there had been large transactions between complainant and defendant, J. T. Lyon, which were closed by note; that he sued upon said note before a justice of the peace who gave him a judgment; that the defendant prayed and obtained an appeal to the circuit court, and gave James Lyon as surety on the appeal bond; that trial was had in the circuit court where the contest was over certain credits claimed by defendant J. T., and verdict was given for complainant, which was set aside by the court and a new trial

granted. The object of the bill is to transfer the litigation to this court as most competent to give relief. The bill charges that the defendant J. T. Lyon "has been fraudulently and secretly disposing of his property, and is about fraudulently removing and disposing of the same."

The bill alleges, as to James Lyon, that he has nothing "come-at-able" by *fi. fa.* at law, but has some equitable estate which could not be reached by ancillary attachment at law.

The bill sets out the previous bill and attachment of Mary A. Lyon as administratrix, and asks for an attachment on the property attached by her subject to her prior attachment; also of the books, notes and accounts of J. T. Lyon not attached by her; also of the interest of James Lyon in his father's estate, and in the hands of the defendant Mary A. as administratrix. Injunctions were also asked for to enjoin any disposition by the parties of the effects attached. The bill prayed that a receiver be appointed to take care of, and collect the notes and accounts, that the cause be consolidated with the case of Mary A. Lyon administratrix, etc.

On the 11th of March, 1871, J. T. Lyon filed his answer denying the equity of complainant's bill, but making no objection to the jurisdiction of the court.

On the 22d of March, 1871, the complainant Woodward filed exceptions to this answer, which were allowed by the master on the 28th of March.

Afterwards in March, 1871, a large number of creditors of the firm of J. T. Lyon & Co. were permitted, upon petition, to come in as defendants to the foregoing suits, and to file answers and cross-bills, which they did, claiming the right to have the partnership assets of J. T. Lyon & Co. applied first to the satisfaction of their debts. J. T. Lyon and Hill, in their answers to these cross-bills, admit the debts as claimed, and express their "more than willingness" that they should be first paid out of the partnership effects.

In September, 1871, J. T. Lyon died, having made a will in which he devised and bequeathed all his property to Pal-

estine Lyon during widowhood, and then to his children. The widow qualified as executrix, but afterwards resigned and dissented from the will.

On the 26th of March, 1872, she filed her petition in this cause against Mary A. Lyon administratrix "and the other parties to said suit," and Thos. P. Lyon, Annie P. Lyon, Charles W. Lyon and Emma Lyon, minor children of J. T. Lyon, who have no regular guardian, and Jno. C. Ferris, administrator with the will annexed of his estate. The petition states the foregoing facts, that commissioners appointed by the county court have allowed her $800 as her year's allowance, and prays:

1. That her right to a year's support as allowed be declared superior to that of the attaching creditors.

2. That she be allowed a homestead exemption of one thousand dollars as provided by law, in the land of which her husband died seized and possessed.

3. That she have dower in said lands.

She asks that the land, being the same mentioned in Mary A. Lyon's bill be sold, and the value of the homestead and dower be allowed out of the proceeds of sale.

Demurrer was put in by the creditors of J. T. Lyon & Co. to so much of this petition as sought that the year's allowance be paid out of the partnership assets, and that she be allowed the value of a homestead exemption. This demurrer was sustained by the court as to the year's allowance, because the law requires it to be made out of specific property to be designated by the commissioners, and that the husband had no interest in the partnership assets until the partnership debts were paid, which debts the petition did not deny were largely more than the assets. Code, §§ 2285, 2286. *Bayless* v. *Bayless*, 4 Cold. 359; *Greenwall* v. *Heiman*, cited 4 King's Dig., § 12,072. It was also sustained as to the claim for a homestead, because the petition did not show that the petitioner and husband were occupying any of the realty as a homestead at his death, or had ever occupied any of it as such. T. & S. Rev. § 2114 *a*, act of 1870, ch. 80. The claim of dower is conceded by all parties.

On the 10th of April, 1872, John C. Ferris, as administrator, with the will annexed of 'J. T. Lyon, deceased, by leave of the court, filed his answer and cross-bill in the foregoing causes, consolidated by order of court and acquiescence of parties, setting forth the fact that he had suggested the insolvency of the estate of J. T. Lyon, that it was necessary to sell all the real estate for the payment of debts, and asking that it be done. The infant heirs of J. T. Lyon are made defendants, but no process is asked for them, if, the petition says, they have been served with process under the widow's petition.

Process was served upon the infant children of J. T. Lyon *under the petition* of Palestine Lyon, on the 4th of April, 1872, but not under the petition of Jno. C. Ferris, as administrator, nor has the suit of Mary A. Lyon, or any of the creditors been revived against them. *Nor has any guardian ad litem been appointed or answered for them.*

On the 12th of October, 1871, an order was made by the court, upon the suggestion of the death of J. T. Lyon and qualification of his widow as executrix, reciting that "on mo tion by consent" the causes were revived against Palestine Lyon, as executrix. There has been no order of revivor against J. C. Ferris, as administrator.

An agreement is found among the papers, but not marked as filed, purporting to be signed by the creditors of J. T. Lyon & Co., or their counsel, agreeing that all the creditors shall share equally in any funds which may be decreed to them or any of them.

A decree can, no doubt, be drawn up, with the consent of Jno. C. Ferris, as administrator, with the will annexed, of J. T. Lyon, deceased, reviving all these suits against him in one general order. This will enable the court to dispose of the matters of litigation so far as they relate to the personal effects of J. T. Lyon's estate, or to the personal indebtedness of J. T. Lyon. The partnership assets of J. T. Lyon & Co. could be subjected to the satisfaction of the partnership debts, without revivor, the surviving partner being before the court.

But the real estate of J. T. Lyon cannot be sold without having his infant children before the court by service of process under the original bill or the petition of J. C. Ferris, administrator, or both, and appearance for them by guardian *ad litem,* and a report upon the insufficiency of the personal assets to pay debts.

The principal contest in this case is between Mary A. Lyon, the original complainant, and the creditors of J. T. Lyon & Co. over the partnership effects realized under her attachments. There can be no doubt that Mary A. Lyon is entitled to have an account with the estate of her son J. T. Lyon for the assets of the estate of C. P. Lyon which came to his hands as her agent, or, outside of the question of agency, with her consent, and which were used by him. It is clear that, as between her and her son, it is a matter of no consequence whether he is liable as agent, trustee, donee, or vendee. In either event, he is liable, for this he admits, and expresses his willingness to settle. It is clear, also, from the admissions on the face of the bill, that J. T. Lyon would be entitled on the indebtedness charged against him for assets of the estate of C. P. Lyon, to claim a credit for any indebtedness due to him from that estate, and any payments made by him in discharge of the debts of the estate, and any money advanced to pay taxes on the property of the estate, and any other just disbursements for the benefit of the estate. It is also clear that, as between him and his mother, he would be entitled to credit for any money paid, or goods furnished to her. The original complainant is entitled to a reference to the master to take and state an account between her individually and as administratrix with her son, in which he will charge the latter with all such money as came, or might by reasonable diligence have come to his hands as general agent of the mother either individually or as administratrix, and will allow him all just credits for payments or expenses made or incurred for the estate or for his mother individually, making proper calculations of interest, but without allowing him any compensation for ser-

vices. His neglect to settle the administration of the estate and to settle with his mother deprives him of all right to claim compensation for services. For any balance which may be found due to Mary A. Lyon, upon taking this account, she will be entitled to a decree against the personal representative of her son. For the satisfaction of this decree, there can be no doubt that she has acquired a lien upon all the real estate of the son by virtue of her attachment. This real estate was all bought and paid for in the life-time of his father, and was, at the date of the attachment, undoubtedly his property, without any pretence of a trust thereon in favor of Mary A. Lyon by reason of the payment therefor having been made out of the assets of C. P. Lyon's estate. This part of the bill is denied by the answer, and not sustained by the proof. Palestine Lyon, the widow of J. T. Lyon, is therefore entitled to dower in said realty, and, subject to this dower, the said Mary A. Lyon has acquired a lien on said realty for the satisfaction of her debt. But this lien cannot be enforced by sale until it has been first ascertained in due form, although it be but a form, that there are no personal assets of J. T. Lyon's estate out of which it can be paid, nor until the minor children of J. T. Lyon are brought before the court in the proceeding for the sale of said land, either under Mary A. Lyon's bill revived first against the personal representative of J. T. Lyon, or under the bill of such personal representative for the sale of said land to pay debts.

It appears that Mary A. Lyon continued, after the formation of the firm of J. T. Lyon & Co., to receive goods from the store, and perhaps money as she had done before, and that payments were made by the firm for the benefit of C. P. Lyon's estate. If these advances and payments were charged up to J. T. Lyon on the books of J. T. Lyon & Co., or were by the express or implied agreement of Hill, to be thus charged, as between them, such items ought to be taken into the account between Mary A. Lyon and her son as ordered above. But if they were not so charged,

and there was no such agreement, there would have to be a separate account between the said Mary A. Lyon and J. T. Lyon & Co. as to these items. The answers of both J. T. Lyon and Hill seem to me fairly to imply that these items should be considered credits between J. T. Lyon and his mother, and I shall so decree; unless the defendant, Hill, show good cause to the contrary.

If the real estate of J. T. Lyon, after deducting the widow's dower, is sufficient to pay the recovery of Mary A. Lyon against his estate, the litigation is ended so far as she is concerned. But, under the apprehension that this will not be the case, she seeks to reach the stock of goods attached upon the ground that some of them were the identical goods which were in the store of C. P. Lyon at his death, and the residue bought with the proceeds of the effects of the estate of C. P. Lyon, and that these facts raise a resulting trust in her favor in the goods, which is superior to the rights of the other partner, or the rights of the partnership creditors. The learned counsel of the complainant threw out the suggestion in argument that there was no proof of any partnership. But the bill does not deny such partnership; concedes it in fact to some extent in the stock at Silver Springs, and only states a want of information on complainant's part in relation to the partnership, and calls for an answer under oath. Both defendants do answer under oath, setting out the terms of the partnership and when it went into operation, and stating that it continued until the goods were attached. No effort has been made to show that these statements were not true. Under these circumstances the partnership must be considered as admitted. If complainant intended to dispute it, she should have amended her bill, and put the fact in issue. It is clear, therefore, that she can have no claim upon the partnership assets as against the co-partner and the partnership-creditors, except to the extent of J. T. Lyon's interest after a settlement of the partnership business, unless there is a trust as claimed by her.

To this claim of a resulting trust it might be sufficient to say that the better opinion is, that such a trust cannot be raised where there is no written conveyance, and where the property, as in this instance, is of a perishable nature. *Union Bank* v. *Baker*, 8 Hum. 447, 450.

But the general principles which govern such trusts, when applied to the facts of this case, effectually take the case out of the rule. A trust is never presumed or implied as intended by the parties, unless, taking all the circumstances together, that is the fair and reasonable interpretation of their acts and transactions. Story Eq. Jur., § 1195 ; *Nashville Bank* v. *Grundy,* Meigs, 256 ; *Robertson* v. *Maclin*, 3 Hay. 70 ; *Elias* v. *Smith*, 6 Hum. 36. A resulting trust, moreover, can only arise upon the state of facts existing at the time of the purchase. *Gee* v. *Gee*, 1 Sneed, 395, 402. Except where the trust is implied from the investment of a trust fund. *Turner* v. *Pettigrew*, 6 Hum. 438.

The case made by the bill is that the complainant as administratrix " left everything in the hands of the said J. T. Lyon to manage, collect, secure," &c., and also delivered to him coupon bills, &c. She did this because she knew little about such business and he was competent to transact it, and because, to quote the exact words, " all that was left she desired for the use of herself and children." The said J. T., she says, " kept, used, and retailed" the groceries left by her intestate, " sold what he could, and reinvested the money and has kept up the same business to this day, and has extended his business." All the funds he " kept and used in said business of merchandizing," and has never settled with her, " only he has paid the taxes on their property and advanced her some little amounts along, to help support herself and family," his account for which she calls upon him to produce.

The evidence sustains the bill in these respects, the complainant's own deposition bringing out the fact of an agreement between her and her son most distinctly.

Upon the state of facts thus disclosed, it is evident that

the assets of the estate were voluntarily entrusted by complainant to the defendant J. T. Lyon, not to realize and settle up the estate as soon as possible, as it was her duty to do, but to do the best he could with it, as a competent and honest business man, "for the use of herself and children." The disposition that he did make of the stock of groceries on hand, and the use to which he put the money which came to his hands, were precisely the disposition and uses intended by her, and this course was continued for several years with her knowledge. He did, in part at least, comply with the agreement as she understood it. He did pay taxes on the property, pay part of the debt which was due for the house and lot in which she lived, and advance some amounts to the support of herself and family. If he did not in fact do all that was expected, that was a ground for proceeding against him for breach of contract, not for setting up a resulting or even a constructive trust. There is not the least pretence for saying that any investment made by him was in violation of a trust, or with trust funds, in the sense of a court of equity to enable a party to follow or claim the property. The property and money of the estate was her's to sell, or give away as she pleased. *Sneed* v. *Hooper*, Cooke, 200. Whatever may be the rights of the distributees in such case the complainant cannot dispute her own acts.

And even if she had any right to follow the fund as against J. T. Lyon, she certainly has none as against the defendant Hill, who is a purchaser for full value, and who, as such, has the right to have the partnership assets applied to the satisfaction of partnership debts. Even if there was a resulting trust between the parties, the title of the partner, who took for value and without notice, would be superior to it. Such a trust is good only against the creditors of the trustee, not against a purchaser for value and without notice.

The result is that the bill has failed so far as it seeks to set up a resulting or other trust in the stock of goods belonging to the firm of J. T. Lyon & Co., and the proceeds of such goods must be applied to the satisfaction of the partnership debts.

The complainant Woodward is entitled to a reference to ascertain whether the defendant J. T. Lyon was indebted to him in any way and what amount, but this only on condition that he dismiss his suit at law and pay the costs thereof. He had the right to prosecute his demand to judgment in one, but not in both courts. But it is obvious from what has already been said, that the creditors of J. T. Lyon & Co. have a superior claim to be first satisfied out of the assets of that firm, whether in the shape of money realized from the sale of goods, or collections of notes and accounts. Woodward's claim is subordinate to the claim of these creditors as to the partnership assets, and to the claim of Mary A. Lyon as to the realty. His bill and attachment so far as James Lyon is concerned must be dismissed with costs. The fact that James Lyon was surety for J. T. Lyon on the appeal bond from the magistrate's judgment, does not make him liable for the debt except in the event of the affirmance of that judgment, which can only be done by the circuit court. But the election to proceed in this court precludes the possibility of judgment in that court. The ground alleged in Woodward's bill for the attachment against the estate of James Lyon, namely, that he has nothing "come-at-able" by *fi. fa.* at law, is not yet provided for by the statute. The attachment cannot, therefore, be sustained as to him, nor can the bill, for he was not a debtor of the complainant at the time the bill was filed, and can never be if complainant elects to proceed in this court.

The petitioner Palestine Lyon is entitled to dower in the lands of her husband, and the decree will declare her rights in this regard.

The interest of J. T. Lyon in his father's estate should be held subject to repay the estate any part of the assets used by him, but the pleadings are not shaped with a view to the adjustment of equities arising in this view. Whether any further steps should be taken in this direction had better be left until the coming in of the reports